Pearson, J.
By the Revised Statute, ch. 105, sec. 37, Jailors are allowed for finding each prisoner food, &c., thirty cents per day. By ch. 38, sec. 6, “ whenever a debitor, shall be. actually confined within the walls of a prison, , it shall be the duty of the jailor to furnish said prisoner *237 with necessary food, during his confinement, should he require íhe same, and the jailor shall be authorised to demand the same fees therefor, as are allowed by law, for keeping other prisoners, and may, if the prisoner he unable to discharge them, recover ihe same from the party at whose instance such debtor was confined in jail. And when, the debtor shall have remained in jail for the space of twenty days, it shall be lawful and sufficient for the sheriff or jail- or, to give notice thereof, and to demand security of him for the prison fees, that may arise after the expiration of twenty days; and .if he shall fail to give such security, then to discharge such debtor out of custody.’’ It was argued by Mr. Bryan with much force, that, as the jailor is required to furnish food daily, and is allowed thirty cents ■per day, by a proper construction of the Statute, he has a right to require the creditor, who has given security tor the prison fees, to pay up from day to day, or that, properly, the bond which he gives, should be on condition to pay the prison fees, at such times as the parties may agree on, say, at the end of each week, or month, or six months ; for it is unreasonable that there should be no right to require payment, until the expiration of the imprisonment, as that might last for many years, even until the death of the prisoner, during which lime many jailors have gone out of office, and certainly, whoever was jailor would find it inconvenient to advance money out of his own pocket, in discharge of a duty, required of him by law, if the time of repayment was indefinite. We are inclined to adopt this construction, but will not do so, definitively, as we prefer to put the decision on another point. Again it is said, by giving the security, the defendant concluded the question as to the debtor’s ability to pay the prison fees, for he was not. bound, to do so, except upon the supposition of the debtor’s inability; and after acting upon that supposition, whereby he took from the jailor the right to discharge th® *238 debtor out of custody, and in that way relieving himself ■from the burden of his support, it is not consistent with fair dealing, afterwards to turn round and say, he was able to pay the prison fees, and I will not be bound by my ^obligation ; because if he intended to make that issue, he ■ought to have done so, whereby he refusing to give the bond, the jailor could have discharged the debtor, “ by taking the responsibility.” There is some force in this view of the question also, but we pass it by.
What is the meaning of the words, “ if the person is unable to discharge the prison fees ?” We think the true construction is, if he has no property or friends within the iState, out of which the money can be collected by any process, which our Courts of Law or of Equity have pow-•er to issue. But in the present case, the debtor had no property or friends within this State, out of which he could ■have raised the amount, even if he had been disposed so to ■do.
It is true, there were certain slaves which the debtor had caused to be run off to Texas, and possibly the plaintiff, by instituting proper proceedings in Texas, might have been able to collect the amount of the prison fees. But it is certain it would have cost him ten times the amount, and jt is also certain, that, to require a jailor to support a debt- or, at his own expense, or to follow his property to Texas, California, or China would be a most unreasonable imposition upon the public officer ; and we think the legislature never intended it. If the jailor cannot force him to pay by any process of any of our Courts, because he has nothing, within the jurisdiction of this State, then, in the language of the Statute, he is “ unable to pay.”
The question, whether a jailor would forfeit his right to be paid his fees, if he opened the door and let the prisoner ■walk out, is not presented by this case, for it is agreed •there was no actual negligence on the part of the plaintiff.
Of this opinion was Nash, J. Ruffin, C. J. dissented.
Pee. Curiam. Judgment affirmed.